IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

L. M. S.,[1]

          Plaintiff,

v.                                        Case No.  23-2344-JWB

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of the Commissioner of Social Security's final decision denying Plaintiff Disability Insurance Benefits.  The matter is fully briefed and ripe for decision.[2] (Docs. 11, 17.)  For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

**I.  Facts**

Plaintiff filed her application for disability benefits on November 9, 2020.  (Doc. 11 at 2.) She alleges a disability under Title II of the Social Security Act.  (*Id.*)  She claims she suffers from severe impairments: lumbar and cervical degenerative disc disease, stenosis with disc protrusions, right carpal tunnel syndrome, myelopathy, neuropathy, paraparesis of the lower extremities, asthma, obesity, pain disorder, related psychological features, and adjustment disorder with mild depression.  (*Id.*)  According to Plaintiff, she became disabled on May 19, 2020.  (*Id.*) Because of these impairments, Plaintiff claims that she is unable to perform past relevant work and cannot work at a sedentary exertional level.  (*See id.*) (quotation omitted).  However, her claim for

---

[1] Plaintiff's initials are used in the caption to protect her privacy.
[2] Plaintiff failed to file a reply brief, and the time to do so has now passed.

disability benefits was denied. (*See id.*) She then filed a written request for a hearing to reconsider that denial, which was granted. (*Id.*)

Plaintiff's hearing took place on December 8, 2022, before an Administrative Law Judge ("ALJ"). The ALJ issued an unfavorable decision on January 18, 2023. (Doc. 4-3 at 12.) He found that Plaintiff endured severe impairments, but that they "do not cause more than minimal functional limitation on the claimant's ability to work, are being adequately controlled with medication, have not persisted for a continuous period of at least 12 months, and/or are resolved with treatment." (*Id.* at 18.) As such, the ALJ concluded that Plaintiff's impairments do not satisfy the level of severity of the listed impairments in 20 CFR 404.1520(d), 404.1525, and 404.1526. (*Id.*) The ALJ then concluded that Plaintiff has a residual functional capacity ("RFC") to perform sedentary work. (*Id.* at 20.) However, the ALJ also concluded that she would need a device to assist with ambulation, standing, and balance. (*Id.*) Because of these limitations, Plaintiff's ability to perform all or substantially all sedentary work was impeded. (*Id.* at 26.) Nonetheless, according to the vocational expert, Plaintiff can perform and fulfill the responsibilities for jobs that exist in the national economy—even with her limitations and RFC. (*Id.*) Therefore, the ALJ determined that Plaintiff "is capable of making a successful adjustment to other work" and concluded that she is "not disabled." (*Id.*) (quotation omitted).

Plaintiff appealed the ALJ's decision to the Appeals Council. (*Id.* at 2.) The Appeals Council also issued an unfavorable ruling to Plaintiff. It found no basis to change the ALJ's decision, so the Council upheld it. (*Id.*) When the Appeals Council upheld the ALJ's decision, it became the final decision of the Social Security Commissioner. (Doc. 11 at 3.)

Plaintiff then filed her action in this court, seeking another appeal of the ALJ's decision. Like the Appeals Council, the court finds no reason to disagree with the ALJ. Hence, for the reasons stated herein, the Commissioner's determination is affirmed.

## II. Standard

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At

step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id.* at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC represents the most that the claimant can still do in a work setting despite her impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. § 416.920(e), (f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

**III.   Analysis**

The steps at issue here are four and five. At step four, the ALJ concluded that Plaintiff has the RFC to perform work at a sedentary exertional level, but with some limitations. (*See* Doc. 4-3 at 24–25.) At step five, the ALJ concluded that she is capable of working in jobs that exist in significant numbers in the national economy. (*Id.* at 26.) Plaintiff raises two arguments for why the ALJ's conclusions were either erroneous or wrong. Regarding step four, she argues that the ALJ used the wrong legal standard when determining her RFC. As to step five, she argues that the ALJ's conclusion that she can work in jobs that exist in significant numbers is unsupported by substantial evidence. The court considers Plaintiff's two arguments in turn.

### A. The Administrative Law Judge Relied on the Correct Legal Standard

Plaintiff argues that the ALJ relied on the incorrect legal standard when assessing Plaintiff's RFC. (Doc. 11 at 33.) Plaintiff then outlines the legal framework for assessing a person's RFC. (*See id.* at 33–34.) Plaintiff relies on *Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017), for the legal standard used to evaluate pain as a disability. (Doc. 11 at 34.) According to the court in *Brownrigg*, there are three factors an ALJ must consider, and the third factor requires that the ALJ determine whether the pain is a disabling condition using both objective and subjective evidence. *See* 688 F. App'x at 545–46. There is a two-step process for evaluating subjective evidence. *See* SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). The ALJ must weigh and analyze the evidence so that it can be properly reviewed during an appeal. *See id.* at *9.

Plaintiff described and laid out this this legal framework in her brief. (*See* Doc. 11 at 33–34.) However, she makes no effort to direct the court to where the ALJ failed to adhere to this framework or when he utilized the wrong legal standard at a specific stage in the framework. Instead, it appears that she takes issue with how the ALJ actually weighed the evidence.

5

Specifically, Plaintiff asserts throughout her briefing that the ALJ failed to connect/support his conclusions to the evidence. (*See e.g.*, Doc. 11 at 38, 40, 41). Hence, the court shall consider Plaintiff's allegations throughout her brief that the ALJ failed to support his findings and conclusions with evidence from the record.

### 1. *Discounting Plaintiff's Pain*

Plaintiff first argues that the ALJ failed to support his conclusion that Plaintiff experienced relief from her pain when she tried spinal cord stimulators. (*Id.* at 38.) According to the ALJ's order, Plaintiff reported to her treating physician that after the first trial with the spinal cord stimulator, she experienced 100 percent relief from her hip pain, and that after the second trial, she experienced 50 percent relief from her back pain and 20 percent relief from her leg pain. (Doc. 4-3 at 21–22; Doc. 4-8 at 461, 519.) However, during the hearing, Plaintiff testified that she received no relief from the spinal cord stimulator treatments. (Doc. 4-3 at 53–54.) Because of Plaintiff's conflicting statements about her relief, the ALJ concluded: "while her relief has been temporary, she has reported improvement with her various treatments, particularly repeated ESIs and the stimulator trials." (*Id.* at 222.)

Plaintiff argues that the ALJ's conclusion is unsupported by the record. This is simply not true. The ALJ cites Plaintiff's medical records where she informs the provider that she experienced relief from the pain as described by the ALJ in his order. (*See* Doc. 4-8 at 461, 519.) Hence, Plaintiff's argument that the ALJ provides no explanation for his conclusion that Plaintiff experienced improvement in her symptoms is simply false. He did not just select random medical records, as Plaintiff asserts, but instead, cited evidence from the record that contradicts Plaintiff's testimony. Thus, Plaintiff is incorrect that the ALJ failed to connect his conclusion about the improvement in Plaintiff's pain to evidence from the record.

##### 2. *Plaintiff's Ability to Perform Basic Work Activities is Supported by the Record*

Second, Plaintiff takes issue with the ALJ's conclusion that she can perform basic work activities. She argues that the ALJ failed to explain why the record indicates Plaintiff can perform basic work activities. (Doc. 11 at 38–39.) She appears to rely[3] on *Brownrigg v. Berryhill*, 688 F. App'x. 542 (10th Cir. 2017), which articulates a three-step analysis for a *pain and credibility assessment*. *See id.* at 545.

Nowhere in Plaintiff's brief does she assert that (1) the ALJ failed to conduct the pain and credibility assessment, or (2) that he conducted the pain and credibility assessment but did so in a deficient manner.

Furthermore, Plaintiff does not explain why or how the ALJ failed to support his conclusion that Plaintiff could perform basic work activities. (Doc. 11 at 39.) Rather, Plaintiff's assertion is conclusory and provides no context for this court to properly assess her arguments. Thus, just as ALJs must provide enough context in their orders so that a reviewing court can track their reasoning, plaintiffs must also provide enough context to their arguments so that a reviewing court can adequately assess their merits. The court finds that Plaintiff has waived this argument.

##### 3. *Plaintiff's Testimony Contradicted Her Description of and the Medical Provider's Opinions about Her Symptoms*

Lastly, Plaintiff asserts (1) that the ALJ failed to explain why Plaintiff's testimony contradicted her description and the medical provider's opinions about her symptoms, and (2) that the ALJ did not identify which "objective medical evidence supported or contradicted the sources' opinions." (*Id.* at 40.) More succinctly, Plaintiff argues the ALJ's order cannot be adequately

---

[3] The court notes that Plaintiff's case citations are incorrect. The block quote she inserts on page 38 is allegedly sourced from *Brownrigg v. Berryhill*, 688 F. App'x. 542 (10th Cir. 2017). However, within that block quote is a citation to *Brownrigg v. Berryhill*. Hence, it appears that Plaintiff's quotation which cites *Brownrigg v Berryhill* is not from *Brownrigg*. Based on the court's own research, this quote appears to come from *Wagner v. Kijakazi*, No. CIV-22-966-STE, 2023 WL 6613763, at *4 (W.D. Okla. Oct. 10, 2023).

reviewed because he failed to "connect the dots . . . between the evidence he summarized and the conclusion[s] he reached." (*Id.*)

Based on Plaintiff's brief, it appears she takes issue with the ALJ's reliance on her testimony that she can lift a gallon of milk, stand for 5-10 minutes at a time, walk half a block at a time, prepare quick meals, drive short distances, and go to the store every week. (*See* Doc. 4-3 at 21, 55–57.) However, Plaintiff makes a conclusory argument about the ALJ's failure to describe how her testimony about her daily activities contradicts her description of her symptoms. Indeed, she fails to cite caselaw that indicates an ALJ must discuss this issue, and she does not direct the court to evidence in the record that supports her argument. Rather, Plaintiff quotes large portions of the ALJ's order and then makes blanket statements about how the ALJ failed to articulate what Plaintiff believes is required.

Plaintiff's assertion that the ALJ failed to explain how/why Plaintiff's testimony contradicted some of the medical providers' findings is also without merit. According to Dr. Farhan Sheikh, Plaintiff should neither perform postural moves nor reach and manipulate items. (*See* Doc. 4-9 at 647–648.) However, as already discussed, Plaintiff testified that she could perform daily activities that involve postural moves and manipulation items. After all, she testified that she could walk, stand, put groceries away, carry milk, and cook. (Doc. 4-3 at 53–54.)

Plaintiff's argument that the ALJ failed to identify the contradicting medical evidence is also without merit. In Plaintiff's brief, she omits portions of the ALJ's order that discusses some of the doctor's opinions and why the ALJ found them to be persuasive, unpersuasive, or only partially persuasive. And there were contradicting medical opinions. Dr. Saad Syed concluded that Plaintiff's symptoms are disabling, as sitting or standing for long periods will increase her pain. (Doc. 4-9 at 658–59.) Similarly, Dr. Farhan Sheikh concluded that Plaintiff should not be

performing any postural moves and/or reaching and manipulating items. By contrast, Dr. Carol Eades concluded that Plaintiff could sit for up to 6 hours and stand for 2 hours per work day so long as she takes frequent breaks. (Doc. 4-4 at 21.)  Dr. Eades also concluded that Plaintiff could work a sedentary job.  (*Id.* at 26.)  Dr. Eades also determined that Plaintiff can engage in postural movements with limitations, (*Id.* at 21–22), contradicting Dr. Sheikh. Dr. Mac Weninger's determinations also contradict those of Dr. Sheikh and Dr. Syed.  After conducting an examination and reviewing the objective evidence, Dr. Weninger concluded that Plaintiff could sit continuously and walk and stand occasionally.  In effect, Dr. Weninger differed from Dr. Sheikh and Dr. Syed because he concluded that Plaintiff's symptoms were not as severe and debilitating as they had concluded.

 Based on Plaintiff's use of conclusory statements/arguments, it appears she is trying to create an issue out of nothing.  Indeed, there were medical opinions that concluded she could perform sedentary work.

Therefore, Plaintiff's argument that the ALJ failed to use the correct legal standard to determine her RFC is denied.  Her arguments were either without merit, conclusory, or asserted without reference to supporting caselaw.

    **B.**     **Substantial Evidence Supports the ALJ's Conclusion**

Plaintiff also argues that the RFC determination is not supported by substantial evidence. (Doc. 11 at 33.)  By contrast Defendant argues that the ALJ's RFC determination is supported by substantial evidence.  To determine whether an ALJ's conclusion is supported by substantial evidence, the "court looks at an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted).  This evidentiary threshold is not high.  *See id.* at 103.

9

Accordingly, "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

After reviewing the record, the court finds the ALJ's conclusion that Plaintiff had the RFC to perform restricted unskilled sedentary work is supported by substantial evidence. The court came to this conclusion after determining that the ALJ rightly found that the evidence indicated Plaintiff's symptoms were not as severe as she alleged. According to the ALJ, Plaintiff's symptoms were not as severe as she claimed for two reasons: (1) the medical opinions contradict Plaintiff's allegations, and (2) the medical records indicate she experienced relief after treatment.

### 1. Medical Opinions Contradict Plaintiff's Allegations

The ALJ concluded that Plaintiff's symptoms were not as severe as she alleges because the medical examinations did not comport with Plaintiff's "extreme allegations." (Doc. 4-3 at 22.) For example, Plaintiff claims she experiences near debilitating symptoms: constant neck and back pain, an inability to lift more than five pounds, and an ability to stand for only 5 to 10 minutes, walk only half a block at a time, and sit for only 5 to 10 minutes. (*Id.* at 52, 55.) She also claims that because of the severe neck and back pain, she is on bedrest at least one day a week and is forced to lie down at least two to three times per day for thirty minutes to an hour. (*Id.* at 57–58, 60.)

The ALJ concluded that there is objective evidence that supports Plaintiff's allegations about her symptoms. For example, he cited the medical imaging showing that she has multilevel degenerative changes in her spine. (*Id.* at 21.) The ALJ also cited the clinical findings that Plaintiff has antalgic gait, a decreased range of motion, muscle spasms, decreased sensation, and an abnormal straight leg raise. (*See id.* at 22).

Nonetheless, the ALJ also concluded that Plaintiff was exaggerating the severity of her symptoms. He came to this conclusion because Plaintiff is able to "ambulate" and "get around" when using a cane. (Doc. 4-3 at 22; Doc. 4-8 at 211.) The ALJ also relied on Dr. Weninger's exams, which concluded that Plaintiff had 5/5 strength for all strength exams, she had full range of motion for all extremities and her lumbar spine, and that sensation was intact in all dermatomes. (Doc. 4-3 at 22; Doc. 4-9 at 316; 345.)

Moreover, the medical evidence also indicated that Plaintiff's mental symptoms were not as severe as she alleged. Plaintiff asserted that she has mood issues, is frequently irritable, and the evaluation indicated she has mild/transient deficits in her concentration and attention abilities. (Doc. 4-3 at 19; Doc. 4-9 at 348–349.) However, the mental status examination from 2020 indicated that Plaintiff's attention thought processes and concentration abilities appeared within normal limits and that her mood had been more positive than negative. (Doc. 4-3 at 24; Doc. 4-8 at 150–151.) Plaintiff also exhibited only mild and transient deficits in her ability to pay attention and concentrate in the psychological exam from 2021 with Krissy Cramer. (Doc. 4-3 at 24; Doc. 4-9 at 349.) Based on the 2021 mental exam, Ms. Cramer concluded that Plaintiff has no psychological difficulties that would inhibit her from obtaining gainful employment. (Doc. 4-3 at 24; Doc. 4-9 at 349.)

In accordance with the medical evidence from the record that (1) Plaintiff can physically move and perform daily tasks associated with a sedentary job, and (2) she has the mental acuity to pay attention and concentrate on basic job responsibilities, the ALJ concluded that Plaintiff's symptoms were not as extreme as she alleges. The court finds that substantial evidence supports the ALJ's conclusion.

    2. *Plaintiff Experienced Improvement After Treatment*

Additionally, the ALJ considered whether the record demonstrates that Plaintiff received effective medical treatment. As the factfinder, an ALJ may consider whether treatment was effective. 20 CFR § 404.1529(c)(3)(iv). Moreover, as the factfinder, he must make decisions about conflicting evidence and is entitled to resolve those conflicts in the manner he sees fit. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). Of course, as required by law, an ALJ must link his conclusions to evidence in the record. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001)., *as amended on denial of reh'g* (Apr. 5, 2002).

As already discussed in Section III.A.1, Plaintiff testified that the spinal cord stimulator provided no relief. By contrast, she reported to her medical providers that the spinal cord stimulator treatment relieved 100 percent of her hip pain, 50 percent of her back pain, and 20 percent of her leg pain. (Doc. 4-3 at 21–22; *See* Doc. 4-8 at 461, 519.) Plaintiff also reported to her medical providers that she experienced relief with repeated epidural steroid injections. In 2020, she reported that the epidural steroid injection helped with her back pain a lot; in 2021, she reported that the injection relieved her of 50 percent of the pain; and in 2022, she again reported that the injection relieved 50 percent of the pain. (Doc. 4-3 at 22; Doc. 4-8 at 208; Doc. 4-9 at 452, 504.)

Not only did Plaintiff contradict her medical record, but she did so by claiming to have not received effective treatment. Accordingly, the ALJ concluded that Plaintiff is exaggerating the severity of her symptoms. Once again, substantial evidence supports the ALJ's conclusion.

Ultimately, because of the two reasons discussed here in Section B, (1) that the medical opinions contradict Plaintiff's allegations, and (2) that Plaintiff experienced improvement after treatment, the ALJ found that Plaintiff had a RFC to perform highly restricted unskilled sedentary work. As discussed, substantial evidence from the record supports the ALJ's conclusions.

Therefore, the court holds that the ALJ's reasoning and conclusion about Plaintiff's RFC is supported by substantial evidence.

    **C. Defendant Argues that the ALJ Properly Evaluated the Medical Sources**

Defendant includes a detailed analysis of the ALJ's evaluation of the medical sources—ranging from medical opinions to test and exam results. (*See* Doc. 17 at 15–25.) Defendant argues that the ALJ properly assessed that evidence, and that this assessment also contributed to the ALJ's conclusion that Plaintiff's RFC would allow her to engage in a restricted unskilled sedentary work. (Doc. 17 at 16.) Plaintiff's brief, by contrast, does not assess the ALJ's evaluation of the medical sources. Instead, she makes general and conclusory statements about the ALJ's failure to specify which medical evidence supports his conclusions. Of note, Plaintiff could have filed a reply brief to refute Defendant's arguments and respond to issues that were first raised by Defendant. She did not, so the court is left to assess Defendant's arguments without the benefit of rebuttal arguments.

In assessing Defendant's briefing/arguments on this matter, the court holds that the ALJ properly assessed the medical sources, and his assessment further demonstrates that his determination of Plaintiff's RFC is supported by substantial evidence.

**IV. Conclusion**

The ALJ's order is supported by substantial evidence, and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED. Dated this 22nd day of August 2024.

                 s/ John Broomes
                 JOHN W. BROOMES
                 UNITED STATES DISTRICT JUDGE